IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| ROBERT FRANK SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CV 318-035 |
| DAVID CHANEY, Medical Doctor, | ) | |
| Defendant. | ) | |

_____
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, filed this civil rights case and is proceeding *pro se*. Presently before the Court are Plaintiff's motion for a preliminary injunction and temporary restraining order (doc. no. 8), Plaintiff's motion to hold in contempt of court (doc. no. 19), and Defendant's motion to revoke Plaintiff's *in forma pauperis* ("IFP") status (doc. no. 18). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for injunctive relief be **DENIED**, Plaintiff's motion to hold in contempt be **DENIED AS MOOT**, and Defendant's motion be **GRANTED**.

**I.  BACKGROUND**

**A.  Plaintiff's Allegations**

Plaintiff alleges he has Chronic Hepatitis C ("HCV"), which causes him to suffer chronic headaches, fatigue, itching, nausea, insomnia, loss of appetite, loss of weight, loss of physical movement, rashes, extreme diarrhea, fever, high levels of "bowel toxic," and severe pain. (Doc. no. 1, p. 5; doc. no. 10, p. 3.) His viral count is in the millions per liter of blood. (Doc. no. 1, p.

5) He has sought treatment from Defendant Chaney since February 21, 2018, but Defendant Chaney refuses to treat him "with (HCV) medication or anything else." (Id.)

### B. Georgia Department of Corrections' HCV Treatment Policy

The Georgia Department of Corrections ("GDC") has partnered with Augusta University's Digestive Health Center and Infectious Disease Department to develop treatment guidelines for inmates with HCV. (Chaney Aff., doc. no. 17-1, ¶ 7; HCV Treat. Pol., doc. no. 17-1, Attch. C.) These guidelines were most recently updated in August 2016. (HCV Treat. Pol. at 50.)

While twenty-five to thirty percent of people infected with HCV clear the virus spontaneously, seventy to seventy-five percent develop Chronic HCV. (Id. at 50-51.) Of these Chronic HCV patients, the majority are asymptomatic. (Id. at 50.) However, Chronic HCV is unpredictable, characterized by fluctuations in Alanine Aminotransferase ("ALT") levels that may or may not indicate liver disease. (Id.) Approximately one-third of Chronic HCV patients have some laboratory or biopsy evidence of liver disease, and approximately ten to twenty percent of patients develop progressive fibrosis of the liver leading to Cirrhosis. (Id. at 50-51.) Once a patient develops Cirrhosis, there is a one to four percent risk of hepatocellular carcinoma ("HCC") and liver failure. (Id.)

GDC guidelines provide priority levels of treatment in accordance with the seriousness of an inmate's HCV. (Id. at 53-54.) Priority 1 inmates are those with a high level of pathology (F3 or F4), are co-infected with HIV, had previous HCV treatment without a sustained viral response, or also have a designated comorbid condition such as cryoglobulinemia, lymphoma, or hepatic carcinoma. (Id. at 53.) Priority 2 and 3 inmates are

those with minimal pathology (F1 or F2), no co-infection with HIV, and no comorbid conditions. (Id. at 54.) If a Priority 2 or 3 inmate's condition worsens or the degree of pathology advances, he will be moved to Priority 1 status. (Id.)

The guidelines also provide treatment and monitoring protocols based on Priority Level. (Id. at 55-56.) Priority 1 inmates are referred to AUGH Hepatology or AU HIV Satellite Clinic at ASMP for a confirmatory Fibroscan and possible treatment options. (Id. at 55.) Priority 2 and 3 inmates are monitored in the GDC's Chronic Illness Clinics and given annual Fibro tests to evaluate liver fibrosis and inflammation, Alpha Feto-Protein screens, and a calculated APRI Score. (Id.) If these tests reveal a progression of the disease or fibrosis, the inmate's Priority Level should be increased. (Id.)

### C. Plaintiff's HCV Diagnosis and Treatment

Plaintiff was diagnosed with HCV in 1997. (Pl.'s Med. R., doc. no. 17-1, Attch. A, p. 24). Prior to his arrival at TSP, Plaintiff underwent significant testing, screening, and treatment for his HCV. A 2014 ultrasound of Plaintiff's abdomen showed possible gallstones, but no evidence of Cirrhosis. (Id.) A July 2016 test of alpha fetoprotein was within normal limits, showing no evidence of liver cancer or precancerous activity, and Plaintiff's December 2016 HCV RNA test indicated his viral load count was 9.8 million IU/L4, which is unconnected to the severity of his infection or symptoms. (Id. at 18, 20; Chaney Aff., doc. no. 17-1, ¶ 19.) Labs from December 21, 2016, June 12, 2017, and November 8, 2017 showed Plaintiff's Bilirubin (measuring liver process), Albumin (measuring liver function), AST (liver enzyme), ALT (liver enzyme), ALK Phos (measuring blockage of the liver duct), and Gamma GT (measuring cell inflammation) were within

3

normal ranges. (Pl.'s Med. R. at 19, 21, 23; Chaney Aff. ¶¶ 20-22.) Plaintiff's June 12, 2017, Fibro Test score was F1-F2, indicating minimal fibrosis, and his Acti Test was A0, indicating no activity. (Pl.'s Med. R. at 22.)

On February 21, 2018, TSP conducted a medical intake upon Plaintiff's transfer to the facility. (Id. at 25-27.) Plaintiff reported his blood pressure was "probably high," and the intake form listed his HCV as one of his documented medical problems. (Id. at 25.) Six days later on February 27, 2018, TSP conducted lab work indicating Plaintiff had normal Protein, Albumin, Bilirubin, AST, ALT, ALK Phos, and CBC (blood count, which can be indicative of liver scarring). (Id. at 28-29; Chaney Aff. ¶ 24.) Thus, per GDC protocol, Defendant treated Plaintiff's HCV as Priority 2, and Plaintiff has been followed regularly in the Chronic Care Clinic for his HCV in addition to several other chronic medical issues. (Chaney Aff. ¶¶ 6, 37.)

Since his transfer to TSP, Defendant and other medical staff have regularly treated Plaintiff for a host of medical complaints. A chronology of his medical treatment at TSP is as follows:

- On March 8, 2018, medical professionals conducted a use of force exam after Plaintiff was pepper sprayed. They found no injuries or abnormalities. (Pl.'s Med. R. at 44-46.)

- On March 13, 2018, Plaintiff reported to sick call complaining of dry cracked skin on his fingers. Nursing staff provided him with tolfanate cream. (Id. at 30.)

- On March 14, 2018, Defendant saw Plaintiff in the TSP medical clinic for complaints of thyroid issues, HCV, blood in his stool, and pain. Defendant noted Plaintiff's HCV was in fair condition and stable. (Id. at 31.)

4

- On March 20, 2018, Plaintiff reported to sick call complaining of sinus problems. Nursing staff provided him with Chlor-Trimeton and warm saline gargles. (Id. at 32.)

- On April 5, 2018, Defendant saw Plaintiff regarding renewal of his bottom bunk profile and his pain medication. Plaintiff became argumentative and refused to listen to Defendant's advice regarding his HCV. (Id. at 33.)

- On April 12, 2018, Defendant saw Plaintiff regarding multiple complaints, including Plaintiff's demand to have a specialist evaluation for his HCV. Defendant informed Plaintiff of the GDC treatment protocol. (Id. at 34; Chaney Aff. ¶ 30.)

- On April 16, 2018, lab work showed Plaintiff's ALT, Gamma GT, and Bibirubin were within normal ranges. Plaintiff's Fibro Test score was F1-F2, indicating minimal fibrosis, and his Acti Test was A0, indicating no activity. (Pl.'s Med. R. at 35-36.)

- On May 4, 2018, Nurse Practioner ("NP") Murray renewed Plaintiff's Bentyl and Prilosec prescriptions on his request. (Id. at 37.)

- On May 10, 2018, NP Murray saw Plaintiff for follow up on his lab work. Plaintiff was angry and argumentative, and he told NP Murray "I've already filed my lawsuit." (Id. at 38.)

- On May 24, 2018, Plaintiff refused to allow a blood draw to update the needed elements for his treatment. (Id. at 39.)

- On June 7, 2018, NP Murray saw Plaintiff for chronic care and found no abnormal findings based on a physical exam. (Id. at 40.)

Defendant avers, based on his medical expertise, Plaintiff's medical records contradict his asserted symptoms, and his symptoms are not exclusive to HCV. (Chaney Aff. ¶ 38.) Furthermore, Defendant opines,

> All recent laboratory testing indicates that [Plaintiff]'s HCV is stable and not worsening. The fact that [Plaintiff] has lived with HCV for over 20 years is further indication to the non-emergent nature of his case, supported by the lab testing . . . ."

5

(Id.) Defendant avers he never disregarded or ignored Plaintiff's medical needs and adhered to GDC guidelines and the standard of care when treating Plaintiff. (Id. ¶ 41.)

## II. DISCUSSION

### A. Defendant Has Responded to Plaintiff's Motion

Plaintiff argues Defendant should be held in contempt of Court for failing to file a response to the motion for injunctive relief. (Doc. no. 19.) Contrary to Plaintiff's contention, Defendant filed a detailed response to his motion on June 29, 2018. (Doc. no. 17.) Accordingly, Plaintiff's motion to hold in contempt should be **DENIED**. (Doc. no. 19.)

### B. Plaintiff Is Not Entitled to a Preliminary Injunction

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson County, 720 F.2d. 1511, 1519 (11th Cir. 1988)).

Plaintiff has not met his burden of persuasion on all four requisites for obtaining injunctive relief. First, Plaintiff has offered nothing to suggest a likelihood of success on the merits. To establish a claim for deliberate indifference to serious medical needs, Plaintiff must show: (1) he had a serious medical need – the objective component, (2) a defendant

6

acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must show his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant: (1) was subjectively aware of a serious risk of harm, and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

7

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505. Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).

Plaintiff cannot show Defendant has been deliberately indifferent to his HCV. As an initial matter, Plaintiff's medical records contradict his allegations of the seriousness of his HCV and his alleged symptoms. Moreover, Defendant has been monitoring Plaintiff's HCV in accordance with the GDC HCV treatment guidelines and providing Plaintiff with prompt, regular medical attention. Indeed, when Defendant attempted to conduct blood work to further monitor Plaintiff's HCV on May 24, 2018, Plaintiff refused. In essence, Plaintiff disagrees with the thorough and medically sound approach Defendant has taken to treating Plaintiff's HCV. Such disagreement cannot sustain liability for deliberate indifference to medical needs. Smith, 375 F. App'x at 910. Thus, Plaintiff cannot satisfy the first prong of the test.

Additionally, Plaintiff has not shown he will suffer irreparable injury if the injunction is not granted. In order to satisfy the irreparable injury requirement, Plaintiff must show the threat of injury is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2nd Cir. 1989)); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th

Cir. 1994) (Plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury."). Plaintiff's medical records show his HCV is asymptomatic and stable, and Defendant and other GDC medical professionals are carefully monitoring Plaintiff's HCV for any signs of progression. Thus, Plaintiff has not shown a substantial threat of a real and irreparable injury that is imminent from failure to treat his HCV more aggressively.

Plaintiff also fails to establish the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party and the injunction would not be adverse to the public interest. Plaintiff alleges the "threat of harmful damage . . . is far greater than the harm this defendant will face if said preliminary injunction and (TRO) is [sic] granted" and argues any complications from his HCV will "the cost our tax payers, the public, two, three, posibly [sic] four times the cost" of treating his HCV now. (Doc. no. 8, pp. 3-4.) However, these conclusory allegations do not establish the need for an injunction. Indeed, the GDC has already established a cost-effective and medically sound procedure for monitoring and treating inmates' HCV. (Doc. no. 17-1, Attch. C.) Simply put, the law is well settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons absent extraordinary circumstances not present here. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Requiring prison officials to provide Plaintiff with the precise HCV treatment he demands in contradiction to the statewide GDC policy would be such an unwarranted interference. Plaintiff's failure to meet his burden as to these requisites necessitates a denial of his motion.

9

**C. Plaintiff's IFP Status Should Be Revoked and the Present Case Dismissed**

A prisoner attempting to proceed IFP in a civil action in federal court must comply with the mandates of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996). 28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"This provision of the PLRA, commonly known as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (internal citations omitted), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007). The Eleventh Circuit has upheld the constitutionality of § 1915(g) because it does not violate an inmate's right to access the courts, the doctrine of separation of powers, an inmate's right to due process of law, or an inmate's right to equal protection. Id. at 721-27.

This Court originally granted Plaintiff permission to proceed under the imminent danger exception to § 1915(g). (Doc. no. 4, p. 2, n.1.) However, at that time, this Court warned, "[S]hould it later be determined that Plaintiff was not in 'imminent danger of serious physical injury' at the time he filed this lawsuit, the Court may revisit the issue on its own initiative." (Id. (citing Butler v. Donald, CV 105-1874-CAM, doc. no. 14 (N.D. Ga. July 14, 2006)).) As discussed in detail above, Plaintiff's medical records and treatment history show he is not in imminent danger of serious physical injury; in fact, his HCV is stable and being adequately

treated by Defendant. See *supra* II.B. Therefore, Defendant's motion to revoke Plaintiff's IFP status (doc. no. 18) should be **GRANTED**, Plaintiff's IFP status **REVOKED**, and this case **DISMISSED** without prejudice under the three strikes provision of the PLRA.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion to hold in contempt of court (doc. no. 19) be **DENIED**, Plaintiff's motion for a preliminary injunction and temporary restraining order (doc. no. 8) be **DENIED**, Defendant's motion to revoke Plaintiff's IFP status (doc. no. 18) be **GRANTED**, Plaintiff's IFP status be **REVOKED**, and this action be **DISMISSED** without prejudice. If Plaintiff wishes to proceed with the claims raised in this lawsuit, he should be required to initiate a new lawsuit, which would require submission of a new complaint and the $400.00 filing fee. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002).

SO REPORTED and RECOMMENDED this 16th day of July, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA